UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 05-cv-00367-WYD

RUDY SALAZAR,

    Plaintiff,

v.

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

_____

**ORDER**
_____

I.    INTRODUCTION

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's application for disability and disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 401-433.  Plaintiff's application filed May 21, 2002 (Transcript ["Tr."] at 44-46) was denied initially.  *Id.* at 34-38.  A hearing was held on July 1, 2004.  *Id.* at 346-385.  On November 17, 2004, Administrative Law Judge ["ALJ"] Paul J. Keohane issued an unfavorable decision, finding that Plaintiff was not disabled. *Id.* at 12-22.

In the decision, the ALJ found at step one of the five-step sequential analysis required by law that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability, April 3, 2001.  Tr. at 16, 21.  At step two, the ALJ found that Plaintiff has the following severe impairments:  "degenerative disc disease of the

cervical spine, status post discectomy." *Id.* at 17, 21. He found that Plaintiff's "low back strain" was not a severe impairment. *Id.* at 17. At step three, the ALJ found that Plaintiff's impairments did not meet or equal a Medical Listing. *Id.*

The ALJ then examined the medical evidence and assessed Plaintiff's residual functional capacity ["RFC"]. Tr. at 17-19. Plaintiff was found to have the RFC "to meet the physical exertional and nonexertional requirements of work that does not require lifting and/or carrying more than 20 pounds occasionally or more than 10 pounds frequently; with the restriction of no lifting, carrying, or reaching with his dominant right hand and arm; no climbing of ladders, ropes, or scaffolds" and only occasional pushing or pulling. *Id.* at 19. Plaintiff was thus found to have the capacity to perform on a full time sustained basis "a range of sedentary and light work. . . . " *Id.*

In making this assessment, the ALJ stated that he gave little weight to functional capacity assessments ["FCEs"] performed in April 2002 and August 2003, an independent vocational evaluation ["I'VE"] performed in June 2004, and a FCE performed after the hearing. *Id.* at 18-20. He gave "some weight" to opinions of treating physicians Dr. Chan and Dr. Richman, but rejected a number of restrictions imposed by them without explanation. *Id.* The ALJ appeared to rely primarily on the findings of the state agency physician whose opinion the ALJ gave "great weight" to. In assessing Plaintiff's credibility, the ALJ gave little weight to Plaintiff's testimony finding it was not "not fully persuasive". *Id.* at 18.

At step four, the ALJ found, after consideration of the Plaintiff's testimony and the testimony of a vocational expert ["VE"[, that Plaintiff could not perform his past

relevant work as a baggage handler, shuttle driver, store laborer, floor waxer, nurse aid, kitchen helper, and assistant cook. Tr. at 20. The ALJ then proceeded to step five, where he considered Plaintiff's age (47 years old at the time of the decision, defined as a "younger individual"), education (high school), vocational experience (no transferable skills), RFC, and the testimony of the VE. *Id.* The VE testified that a hypothetical person with Plaintiff's RFC and vocational profile would be able to perform jobs as a dealer account investigator (4,047 jobs in Colorado and 33,000 nationally), furniture rental consultant (274 jobs in Colorado and 16,000 nationally), and information clerk (315 jobs in Colorado and 16,000 nationally). *Id.*

According to the ALJ, "[t]he VE testified that these jobs are consistent with their descriptions in the DOT and no adjustments are required." Tr. at 20. The ALJ further found, based on the VE's testimony, that there were a significant number of jobs which Plaintiff was capable of performing. *Id.* at 21. The ALJ concluded that, using Rule 201.21, Table No. 1, and 202.21, Table No. 2, of Appendix 2, Subpart P, Regulations No. 4, as a framework for the decision, the Plaintiff has not been under a disability as defined in the Act at any time after April 3, 2001. *Id.* at 21-22.[1]

The Appeals Council determined that there was no reason to review the ALJ's decision, and denied Plaintiff's request for review. Tr. at 7-9. This was the final

---

[1] The ALJ acknowledged that a FCE conducted at his request after the hearing found that Plaintiff had significant impairments that were not consistent with the RFC. *Id.* While the ALJ gave little weight to this opinion, he stated that even if great weight were given to the opinion and the testimony of Plaintiff, the VE testified that an individual with the additional functional limitations indicated would still be capable of performing the job as information clerk, that the number of jobs as furniture rental consultant would only be eroded by 25%, and that the dealer account investigator jobs would only be eroded by 10%. *Id.* at 20-21.

decision of the agency, and this Court has jurisdiction to review the decision pursuant to 42 U.S.C. § 405(g).

II.   ANALYSIS

    A.   Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Although the court should carefully examine the record, it may not weigh the evidence or substitute its discretion for that of the Commissioner. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

    B.   Plaintiff's Arguments

        1.   Whether the ALJ Erred in Finding that Plaintiff Can Perform Light Work and in Weighing the Medical Evidence

Plaintiff argues that the ALJ's conclusion that Plaintiff was capable of performing light work is not supported by substantial evidence.[2] Plaintiff cites to the permanent

---

[2] Light work is defined as lifting no more than 20 pounds with frequent lifting or carrying up to 10 pounds. SSR 83-10. Sedentary work as defined as lifting no more than 10 pounds at a time. *Id.*

-4-

work restrictions imposed by his treating physician, Dr. Richman, that restricted Plaintiff to lifting no more than 5-10 pounds (Tr. at 205), and the opinion of Dr. Chan, the treating physician prior to Dr. Richman, that Plaintiff should not lift more than 15 pounds. Tr. at 135-136. Plaintiff argues that the opinions of these doctors are well supported by the clinical exam findings, MRI findings and findings from the surgical review. Plaintiff also argues that the ALJ gave improper weight to these opinions. I find, for the reasons stated below, that the ALJ did not properly weigh the medical evidence and the opinions of Plaintiff's treating physicians.

An ALJ is "required to give controlling weight to a treating physician's opinion about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, and any physical or mental restrictions, if 'it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.'" *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) (quotation omitted); *see also* 20 C.F.R. § 404.1527(d)(2); Soc. Sec. Ruling 96-2p.

However, a treating physician's report can be rejected "if it is brief, conclusory and unsupported by medical evidence" or is "not supported by specific findings." *Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988). "The ALJ must give specific, legitimate reasons for disregarding the treating physician's opinion that a claimant is disabled." *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995).

Both Dr. Richman and Dr. Chan, Plaintiff's treating physicians, limited Plaintiff to lifting no more than 10-15 pounds. *See* Tr. at 205 (opinion of Dr. Richman that Plaintiff can lift no more than 5-10 pounds), 135-36 (opinion of Dr. Chan that Plaintiff was limited to limiting no more than 15 pounds and was restricted to sedentary work). If such findings were accepted, Plaintiff would be limited to sedentary work. The physicians also imposed additional requirements that were not accepted by the ALJ. For example, Dr. Richman restricted Plaintiff to no more than 5 pounds of repetitive lifting, carrying 5 pounds, pushing and pulling no more than 10-20 pounds, and minimal pinching/ gripping. *Id.* at 205. Dr. Chan found that Plaintiff should not lift anything overhead, his grip strength was low and Plaintiff was to avoid any type of extension of the cervical spine. *Id.* at 136. The ALJ, on the other hand, found that Plaintiff can lift 20 pounds occasionally and 10 pounds frequently, restricted lifting, carrying, or reaching only with his dominant right hand and arm; and only occasional pushing or pulling.

While the ALJ stated that he gave some weight to the opinions of Dr. Chan and Dr. Richman, it is clear from the RFC that he rejected certain limitations and/or the scope of such limitations without explanation.[3] This was improper. *See Robinson v.*

---

[3] More specifically, the ALJ stated that he gave "considerable weight to [Dr. Richman's] opinion that the claimant would have no significant difficulty engaging in postural activities, or in activities involving sitting, standing, or walking." Tr. at 19. He further stated, "[t]he medical evidence also supports a finding that the claimant would have substantial limitations in using his right arm and hand to lift, carry, push, or pull." *Id.* "However, the objective medical evidence does not support a finding that the claimant would have significant exertional limitations in his ability to use his left arm and hand." *Id.* As to Dr. Chan, who was not identified as a treating physician, the ALJ gave considerable weight to the opinion that Plaintiff was capable of "at least" sedentary work, but stated he was "convinced that the claimant's lack of maximum effort [as noted by Dr. Chan] indicates he could likely perform at an even higher exertional level." *Id.* at 18.

*Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) ("'an ALJ must give good reasons . . . for the weight assigned to a treating physician's opinion,' that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight'") (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003)).  The ALJ appeared to selectively pick out portions of the treating physician's reports that supported his RFC and the denial of benefits, while improperly rejecting the other portions.  This was also improper.  *See Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at *3 n. 2 (10th Cir. 2004).

Indeed, the limitations imposed by the treating physicians were supported in large part by almost all the other evidence.  First, objective medical evidence in the record supports these findings, including the examination findings of these doctors, an MRI, and findings from the surgical review.  Further, a FCE and examination by Dr. Maisel that the ALJ required after the hearing also supported these findings, and imposed additional limitations.  Tr. at 336-345.  An I'VE and FCEs performed in April 2002 and August 2003 also support many of the treating physicians' findings.  *See id.* at 153-59, 122-32, and 198-204.

I also find that the ALJ's decision not to give weight to the doctor's findings as to exertional limitations in Plaintiff's ability to use his left arm and hand is not supported by substantial evidence.  The only reason the ALJ gave for rejecting this limitation is that "the objective medical evidence does not support a finding that the claimant would have significant exertional limitations in his ability to use his left arm and hand." Tr. at 19.  The ALJ ignored the fact that objective medical evidence showed that Plaintiff had

significant atrophy in both upper extremities. *See* Tr. at 135, 153. Dr. Chan found that as a result of this atrophy, his grip strength would be low and that Plaintiff should be limited to sedentary work. *Id.* at 135. Dr. Richman recommended surgery in part because Plaintiff "now has gotten to the point where [he] is losing function in his arms and hands. . . . " Dr. Sung made the same recommendation. *Id.* at 197.[4] Thus, this finding by the ALJ is not supported by substantial evidence.

     I also find that it was improper for the ALJ to reject much of the medical evidence on the basis that Plaintiff was magnifying his symptoms and/or not making maximum efforts. *See* Tr. at 18-20. The ALJ gave little weight to the FCEs performed in April 2002 and August 2003 which found that Plaintiff was significantly limited in many areas, including his ability to sit, stand, walk, lift, and grip. The reason given by the ALJ for according the FCEs little weight was that the therapists who administered them questioned the validity of Plaintiff's performance or suggested that he gave less than maximum effort. *See id.* at 18. The ALJ also gave "little weight" to the I'VE of June 2004 that found Plaintiff would be unable to perform any kind of substantial gainful activity. *Id.* at 19. The ALJ stated as to the I'VE that the vocational counselor relied heavily on the August 2003 assessment whose "validity was questioned even by the therapist who administered it." *Id.* As to Dr. Chan, while the ALJ stated that he gave considerable weight to his opinion that Plaintiff can perform work "at least" at the sedentary level, the ALJ was "convinced that the claimant's lack of maximum effort

---

    [4] Unfortunately, Plaintiff was not found to have made a significant recovery from the surgery. *Id.* at 191.

-8-

indicates he could likely perform at an even higher exertional level." *Id.* at 18.[5]  Finally, the ALJ gave little weight to the opinion of Dr. Maisel based on his "observation suggesting that the claimant was magnifying his symptoms." *Id.* at 20.

While it is true that the FCEs and other evaluations found that Plaintiff may not have been making a maximum effort, the evaluators were still able to assess what they believed the limitations to be.  It is speculation and/or a lay judgment to assume that Plaintiff was actually able to perform at a higher level than that found in the evaluators' reports.  *See Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) ("'[i]n choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation, or lay opinion.*'" *Id.* (emphasis in original) (quoting *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002)); *see also Winfrey v. Chater*, 92 F.3d 1017, 1021-22 (10th Cir. 1996) (the ALJ is not entitled to substitute his own medical judgment for that medical professionals).  Further, if the ALJ truly thought that the reports were ambiguous as to what Plaintiff's level of functioning was, he was required to consult with the treating physicians as to this issue.  See *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002).

In this case, however, the treating physicians actually did render an opinion as to the validity of the FCES, which the ALJ improperly ignored.  The April 2002 FCE was

---

[5] I note that Dr. Chan did not opine that Plaintiff could perform "at least" sedentary work, but opined that Plaintiff was limited to sedentary work.  This is an example of how the ALJ selectively applied and/or misconstrued the evidence to support his RFC decision.

performed at the request of Dr. Chan. It noted that there were areas where Plaintiff showed maximum and consistent effort and areas where he showed less than maximum effort. Tr. at 122-131. The occupational therapist who performed the FCE "strongly recommended that the findings from this evaluation be correlated with other objective clinical findings and be subjected to further interpretation and determination of validity by the treating physician." *Id.* at 131. Consistent with this recommendation, Dr. Chan reviewed the FCE and interpreted its validity. *Id.* at 135-36. He found that Plaintiff performed at maximum capacity on certain of the tests, and that his failure to perform at maximum capacity for one of the tests "should be interpreted with caution." *Id.* at 135. Dr. Chan concluded, based on his interpretation of the FCE, that Plaintiff had significant impairments as outlined in the report. *Id.* at 136. Similarly, the August 2003 FCE was conducted at the request of Dr. Richman. After being provided a copy of the FCE, Dr. Richman imposed what restrictions he thought were appropriate as to Plaintiff. The ALJ's decision to reject the FCEs outright improperly substituted his judgment in place of the treating physicians as to the validity of the restrictions found therein. This was error. *Langley*, 373 F.3d at 1121.

Finally, I note that while the ALJ stated that he gave some weight to the opinions of the treating physicians, it is clear when one looks at the RFC that the ALJ relied almost exclusively on the assessment of the state agency physician. That physician completed a physical capacity assessment form upon review of the medical records and without examining Plaintiff. *See* Tr. at 160-68. He found in the form that Plaintiff as able to occasionally lift up to 15 pounds, frequently lift 10 pounds, occasionally

push/pull with the right arm, and had manipulative limitations including handling in the right arm and reaching with both the right and left arms. *Id*. He did not issue a written report, but merely checked off boxes in the form and made minor written comments. *Id*. The ALJ found that this opinion was "well supported by and consistent with the record as a whole" and accorded that opinion "great weight." *Id*. at 19.

I find that the ALJ mischaracterized the state agency physician's findings and improperly relied on same. First, as noted by the Plaintiff, the state agency physician did not find that Plaintiff could perform light work. Instead, he found that Plaintiff was restricted to lifting no more than 15 pounds, which would be characterized as sedentary work under the regulations. Second, to the extent the state agency physician's findings in the RFC form were not supported by the other medical evidence, the ALJ could not rely on this opinion. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1223 (10th Cir. 2004) (evaluations by consultative examiners such as this are insufficient to constitute substantial evidence where they are not accompanied by thorough written reports or testimony); *see also Lee,* 2004 WL 2810224, at * 3 (if the ALJ relies heavily on opinions of an agency medical consultant that did not examine the claimant, as here, those "opinions must themselves find adequate support in the medical evidence").

.      Second, while the ALJ stated that he gave great weight to the findings of the state agency physician, he accepting only some of the restrictions while not accepting others or imposed restrictions that were not consistent with the physician's findings. For example, the state agency physician found that Plaintiff could lift only 15 pounds (Tr. at 161), and the RFC stated that Plaintiff could lift 20 pounds. This is significant. If

the ALJ had accepted the 15 pound restriction, Plaintiff would have been limited to sedentary work. Further, the ALJ did not accept other restrictions found by the physician, including limited reaching in all directions (both right and left) and limited handling (gross manipulation) in the right hand. *Id.* at 163.

This means that the RFC is not supported by the evidence the ALJ supposedly gave great weight to, and the Court is improperly left to speculate what evidence the ALJ actually relied on in making the RFC. This is error. *See Moon v. Barnhart*, 159 Fed. Appx. 20, 2005 WL 3446576, at *2-3 (remanding the case where the court was unable to determine what evidence the ALJ relied on in connection with the RFC); *see also Wiederholt v. Barnhart*, 121 Fed. Appx. 833, 2005 WL 290082, *5 (10th Cir. 2005) ("[b]ecause the ALJ omitted, without explanation, impairments that he found to exist ..., the resulting hypothetical question was flawed").

    2. <u>Whether the ALJ Failed to Consider All of Plaintiff's Impairments and Failed to Properly Assess Credibility</u>

Plaintiff also argues that the ALJ ignored the totality of his disorders, and failed to consider certain impairments associated with same. I agree. As stated earlier, the ALJ found as severe impairments that Plaintiff has "degenerative disc disease of the cervical spine, status post discectomy." Tr. at 17, 21. However, the objective medical evidence demonstrates other impairments that were not referenced or analyzed by the ALJ, including spinal cord disorder - myelomalacia, C8 radiculopathy, spinal stenosis, neural foraminal, narrowing nerve entrapment, neuoropathic pain, cervical stenosis from C4-C7 with significant spinal cord compression, spinal cord atrophy, and

significant atrophy of the upper extremities.  *See id.* at 140, 142, 146, 177-78, 180, 195, 197, and 211-12.  Plaintiff also argues that the medical findings show that he has problems with his neck which were not properly considered.  I agree that the ALJ erred in not considering these impairments and the impact of same.

Plaintiff also argues that the ALJ failed to properly consider the impact of Plaintiff's pain and his credibility.  I agree.  The ALJ found that Plaintiff's complaints of pain and other complaints were "not fully persuasive" and thus gave them "little weight."  Tr. at 18.  However, the objective medical evidence clearly established a pain-producing impairment.  Further, I find that the evidence demonstrates at least a "loose nexus" between the impairments and the Claimant's subjective allegations of pain.  Accordingly, the ALJ was required to consider all the evidence, both objective and subjective, in determining whether Plaintiff's pain is disabling.  *See Musgrave v. Sullivan*, 966 F.2d 1371, 1375-76 (10th Cir. 1992).

The ALJ appeared to recognize this as he stated that he had to consider the various factors noted at page 18 of the decision.  However, the only factor that the ALJ discussed was Plaintiff's daily activities.  *Id.*  This was error.  He completely ignored Plaintiff's medications and the impact of same, functional limitations and restrictions that may be caused by pain, and other factors the ALJ was required to consider.  *See Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993) (discussing the various factors).

Further, I find error in the way the ALJ weighed the household activities.  As to such activities, the ALJ stated:

-13-

> Although [Plaintiff] stated that he had virtually no use of his right arm, and was significantly limited in the use of his left arm, he also testified that he is able to perform some daily tasks such as sweeping, gardening, running the vacuum, doing the dishes, light cooking, laundry, taking out the trash, and pumping his own gas. Despite his allegation that he can sit for no more than ten minutes at a time, he also testified that he occasionally goes out to the movies, an activity that requires considerably more than ten minutes of sitting. The claimant has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations, which supports a finding that he could perform some physical work-related activities. Consequently, his complaints are not found to be fully persuasive and have been given little weight.

*Id.*

The fact that Plaintiff can engage in minimal daily activities is, however, not necessarily inconsistent with the limitations that Plaintiff describes from his impairments. "[S]poradic diversions do not establish that a person is capable of engaging in substantial gainful activity." *Byron v. Heckler*, 742 F.2d 1232, 1235 (citing *Broadbent v. Harris*, 698 F.2d 407 (10th Cir. 1983)). The ALJ was required to consider what Plaintiff can do on a consistent basis, not what he can do on an occasional basis.

Further, the ALJ mischaracterized Plaintiff's testimony. He did not testify that he is unrestricted in the ability to perform the household activities referenced by the ALJ. Instead, Plaintiff's testimony describes significant limitations associated with the performance of such activities which were not taken into account by the ALJ. *See* Tr. at 362-375. It appears that the ALJ culled the evidence and cited isolated parts that supported his conclusion while ignoring other parts that did not. This was improper. *See Arrington v. Apfel*, No. 98-7099, 1999 WL 446013, at *8-9 (10th Cir. 1999) ('[i]n evaluating plaintiff's testimony and comparing it with 'prior statements and other

evidence,' . . ., the ALJ was selectively choosing from the record those statements he wished to rely on without properly considering all the evidence. . . . [w]e have repeatedly held that an ALJ may not engage in a selective evidentiary review") (citing cases); *see also Sherman v. Apfel*, No. 97-7085, 1998 WL 163355, at *5-6 (10th Cir. 1998). Accordingly, I agree with Plaintiff that the credibility determination is not linked to substantial evidence on the record.

Finally, I note that even if pain is properly found, by itself, not to be disabling, "that is not the end of the inquiry." *Harrison v. Shalala*, No. 93-5238, 1994 WL 266742, at *5 (10th Cir. 1994). "The [Commissioner] must show that 'jobs exist in the national economy that the claimant may perform *given the level of pain [she] suffers*.'" *Id.* (quoting *Thompson*, 987 F.2d at 1490-91 (further quotations omitted). The ALJ did not do this.

### 3.     Whether the ALJ Failed to Apply SSR 96-9p

I next address Plaintiff's argument that the ALJ failed to apply SSR 96-9p to direct a finding of disability based on Plaintiff's significant manipulative limitations. Plaintiff also argues that the Court may rely on this regulation to direct a finding that he is not disabled, such that a remand to the Commissioner is not required. SSR 96-9p addresses the impact of a RFC assessment for less than a full range of sedentary work on an individual's ability to do other work. 1996 WL 374185, at *1 (1996). As to manipulative limitations, the regulation states:

> Most unskilled sedentary jobs require good use of both hands and the fingers, i.e., bilateral manual dexterity. Fine movements of small objects require use of the fingers; e.g., to pick or pinch. Most unskilled sedentary

> jobs require good use of the hands and fingers for repetitive hand-finger actions.
>
> Any significant manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base. For example, example 1 in section 201.00(h) of appendix 2, describes an individual who has an impairment that prevents the performance of any sedentary occupations that require bilateral manual dexterity (i.e., "limits the individual to sedentary jobs which do not require bilateral manual dexterity"). When the limitation is less significant, especially if the limitation is in the non-dominant hand, it may be useful to consult a vocational resource. . . .

*Id.* at *8.

I find that SSR 96-9p does not necessarily direct a finding of disabled and that the proper course of action in this case is a remand of the case.  First, this regulation only applies to sedentary work.  The ALJ found that Plaintiff could also perform light work.  While I find little to no evidence in the record that supports a finding that Plaintiff can perform light work, I leave it to the Commissioner to make this determination based on a proper reweighing of the evidence.  Second, the extent of Plaintiff's manipulative limitations also is unclear from the evidence.  While I believe the evidence certainly supports manipulative limitations in connection with the right arm (and probably the left arm as well), I leave it to the Commissioner to determine the extent of same when the evidence is reweighed.  Finally, I believe a remand is proper for the Commissioner to assess the extent that manipulative limitations impair the job base.  If these limitations do significantly erode the job base, it may well be required that the Commissioner direct a finding of disabled.  Again, however, I leave it to the Commissioner to make this determination.

### 4.     Whether the Conclusions of the VE Provide Substantial Evidence for the ALJ's Decision

Plaintiff argues that the VE did not consider all of Plaintiff's physical impairments and that this impacted the ability of the ALJ to rely on the VE's testimony.  I agree with Plaintiff on this issue, as discussed in Section II.B.2, *supra*.  Since the ALJ did not consider all of Plaintiff's impairments, this may impact the validity of the hypothetical question given to the VE.  *See Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) ("'testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the . . . decision'") (quotation omitted).  This needs to be addressed on remand.

Plaintiff also argues that the conclusions of the VE are in direct contradiction of Social Security's own regulations and cannot constitute substantial evidence.  Plaintiff places particular emphasis on the VE's finding that even if Plaintiff could perform only sedentary work and had significant limitations in both arms, he would still be capable of performing the one sedentary position identified by the VE.  *See* Tr. at 19.  I find that this is an issue that must be determined on remand.

I note, however, that to the extent this position (information clerk) is actually characterized in the Dictionary of Occupational Titles ["DOT"[ as light work, or to the extent the DOT otherwise shows that Plaintiff's impairments may prevent him from being able to perform this work, the Commissioner must explore this on remand.  *See Smith v. Barnhart*, No. 04-7027, 2006 WL 467958, at *3 (10th Cir. Feb. 28, 2006) ("before an ALJ may rely on expert vocational evidence as substantial evidence . . .,

the ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the [DOT], and elicit a reasonable explanation for any discrepancy on this point'") (quotation omitted).

I further note that I found no support in the hearing transcript for the ALJ's statement in his decision that the VE testified that the jobs he found "were consistent with their descriptions in the DOT and no adjustments were required." Tr. at 20. To the extent the VE described erosions in the job base if certain impairments were accepted, I do not believe that these jobs as performed would necessarily be consistent with the DOT. Finally, I agree with Plaintiff that, on remand, the Commissioner must determine the impact of SSR 96-9p on the ability to perform work, as previously discussed, as well as other pertinent regulations.

### C.    Commissioner's Motion for Remand

The Commissioner acknowledges in its response brief that the record was not sufficiently developed in this case and that additional administrative proceedings are necessary to reevaluate Plaintiff. I further note that the Court denied an initial Motion for Remand filed by the Commissioner. *See* Minute Order of Judge Kane dated October 13, 2005. While I have concluded that a remand is now proper, I do so having addressed the key issues in this case and with guidance to the Commissioner about errors the ALJ made. To the extent the Commissioner details in its response other areas to be developed on remand that were not addressed in this Order, I agree that development of these issues is appropriate.

III.   <u>CONCLUSION</u>

Based upon the errors described above, I find that this case must be reversed and remanded for reweighing of the evidence and further fact finding consistent with this Order.

Accordingly, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner pursuant to 42 U.S.C. § 405(g).

Dated March 31, 2006

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge